**MEGAN L. DISHONG**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**P.O. Box 8329**
**Missoula, MT 59807**
**105 E. Pine, 2nd Floor**
**Missoula, MT 59802**
**Phone: (406) 829-3323**
**Fax: (406) 542-1476**
**E-mail: megan.dishong@usdoj.gov**

**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### GREAT FALLS DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**CHARLES JANSKY, SOMONT OIL COMPANY, INC., and FERDIG OIL COMPANY, INC.,**<br><br>**Defendants.** | **CV 17-   -GF-**<br><br>**COMPLAINT** |

Plaintiff, The United States of America ("United States" or "Government"), brings this civil action against the defendants and alleges as follows:

# I. INTRODUCTION

1.      This is an action under the False Claims Act, 31 U.S.C. §§ 3729-3733 ("FCA"), Section 112 of the Federal Oil and Gas Royalty Management Act ("FOGRMA"), 30 U.S.C. § 1722, and common law and equitable theories of unjust enrichment and disgorgement, to recover damages, penalties and/or disgorgement of additional royalties in connection with the defendants' underpayment of royalties to the United States for natural gas and natural gas liquids (collectively "gas") produced from federal lands.   These claims are premised on the defendants' use of false records and statements to misreport or conceal the proper value of their federal gas production for royalty purposes.

# II. JURISDICTION AND VENUE

2.      This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1345.

3.      Venue is proper in the Great Falls division of this district under 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1391(b) and (c), since the defendants reside and/or transact business within this district and division.

4.      The United States and defendants entered successive tolling agreements collectively covering the period from January 1, 2016 to December 31, 2017, and excluded those time periods for purposes of calculating any applicable statute of limitations.

## III. PARTIES

5. The plaintiff in this action is the United States, suing on its own behalf and on behalf of the Department of the Interior, an agency and instrumentality of the United States whose operations and obligations are paid by funds from the United States Treasury.

6. Charles Jansky is a resident of Texas who conducts business in this district.

7. Somont Oil Company, Inc. ("Somont") is a Montana close corporation that conducts business in this district. Somont is or was in the business of producing and selling gas. At all times pertinent to this Complaint, Jansky was the controlling shareholder in Somont.

8. Ferdig Oil Company, Inc. ("Ferdig") is a Montana close corporation that conducts business in this district. Ferdig is or was in the business of purchasing, processing, and selling gas. At all times pertinent to this Complaint, Jansky was the controlling shareholder in Ferdig.

## IV. BACKGROUND

**A.     Gas Production and Distribution**

9.     Natural gas, consisting primarily of methane, is a colorless and odorless hydrocarbon fuel.  It is produced by drilling into natural gas formations located beneath the Earth's surface.

10.    Once a natural gas formation is located, a well is drilled to extract the gas.  Typically, a well is constructed under the terms of a lease between the landowner and a natural gas production company, authorizing the production company to extract gas from a designated area in exchange for payment to the landowner of a percentage of the production, called a royalty.

11.    Depending on the characteristics of a natural gas formation, the extracted gas may contain impurities such as water, hydrogen sulfide, nitrogen, and carbon dioxide.  Natural gas extracted from coal seams ("coal seam gas"), for example, contains substantial amounts of water and carbon dioxide.  Typically, impurities must be removed before the natural gas is transported and/or sold.  The removal of these impurities, called treating, may occur either at or away from the lease.

12.    Most natural gas also contains hydrocarbon fuels heavier than methane, such as ethane, propane, butane, and pentane.  These heavier fuels are

commonly referred to as natural gas liquids ("NGLs") because in isolation they exist in the liquid state at relatively low pressure. NGLs often have higher economic value than methane and, in addition, must be taken out of the gas stream to make methane usable for many commercial applications. Thus, NGLs are typically removed from the natural gas stream through processing and sold as separate products.

13. The processing of natural gas to remove NGLs occurs at facilities known as gas plants. The end products of processing are marketable natural gas, or "residue gas," and NGLs, or "gas plant products."

14. Natural gas is transported from the well to a gas plant by small diameter pipelines. Once the gas has been processed, the end products are transported to end-users by large diameter pipelines called mainlines.

15. Mainlines connect regions of supply with market areas and can either be intrastate or interstate. Interstate mainlines are regulated by the Federal Energy and Regulatory Commission ("FERC"), which reviews and approves tariffs establishing the maximum price that pipeline operators can charge for their services. Depending on current supply and other factors relating to their respective systems, operators of interstate mainlines often charge less than the approved maximum FERC tariff for the transportation of gas on their systems.

## B.     The Federal Royalty Program

16.     Congress has authorized the Secretary of the Department of the Interior to lease federal and Indian lands for the production of gas and other minerals under various leasing statutes, including the Mineral Leasing Act, 30 U.S.C. § 181 et seq. and the Mineral Leasing Act for Acquired Lands, 30 U.S.C.§ 351 et seq.

17.     Under the terms of these leases, and applicable laws and regulations, federal lessees are required to pay royalties to the United States on gas produced from those leases.   Generally, federal lessees are required to pay royalties equivalent to one-eighth of the value of production for onshore federal lands, depending on specific lease terms.

18.     Under the various leasing statutes, the Secretary of the Department of the Interior is authorized to promulgate regulations governing the value of federal gas for royalty computation purposes.   The Secretary has delegated this rulemaking authority to the Department of the Interior's Office of Natural Resources Revenue ("ONRR")[1] which has primary responsibility for collecting and auditing the payment of royalties to the United States and Indian tribes.

---

[1] ONRR was previously known as Minerals Management Service ("MMS").

19. In 1988, ONRR's predecessor, MMS, promulgated comprehensive royalty regulations governing the valuation of natural gas and NGLs produced from federal and Indian lands. *See e.g.* 30 C.F.R. § 1206.150 et seq. (1988).

20. The method for valuing gas produced by a federal lessee depends on how the lessee disposes of the gas. The regulations divide a federal lessee's transactions into two types: gas sold pursuant to an arm's-length contract and gas not sold pursuant to an arm's-length contract. An arm's-length contract is "a contract or agreement between independent persons who are not affiliates and who have opposing economic interests regarding that contract." 30 C.F.R. § 1206.151. The burden is on the lessee to establish that a contract is arm's-length. *Id*. § 1206.152(b)(1)(i).

21. If a lessee sells its gas pursuant to an arm's-length contract, then the value of the production is the "gross proceeds" of the sale. *Id*. Gross proceeds are the "total monies and other consideration accruing to an oil and gas lessee for the disposition of the gas, residue gas, or gas plant products produced." *Id*. § 1206.151.

22. If a lessee sells its gas pursuant to a non-arm's-length contract, then the value of the production is, at a minimum, the "reasonable value" of the production as determined under specified benchmarks. These benchmarks differ

depending on whether or not the gas has been processed. *Id*. §§ 1206.152, 1206.153.

23. "Processing" refers to "any process designed to remove elements or compounds (hydrocarbon and nonhydrocarbon) from gas, including absorption, adsorption, or refrigeration. Field processes which normally take place on or near the lease, such as natural pressure reduction, mechanical separation, heating, cooling, dehydration, and compression, are not considered processing." *Id*. § 1206.151. "Transportation" refers to "the reasonable, actual costs of moving unprocessed gas, residue gas, or gas plant products to a point of sale or delivery off the lease, unit area, or communitized area, or away from a processing plant." *Id.*

24. For gas that is sold by the lessee prior to processing under a non-arm's-length contract, the lessee must determine the reasonable value of its production based on the value of the residue gas, the NGLs, and any condensate recovered, by applying the first applicable of the three benchmarks listed at 30 C.F.R. 1206.153(c). These benchmarks, in order of priority, are: (a) the lessee's non-arm's-length gross proceeds, provided that they are "equivalent" to the gross proceeds accruing under "comparable arm's-length contracts" for sales of residue gas and gas plant products from the "same processing plant" or "nearby plants"; (b) "other information relevant in valuing like-quality residue gas and gas plant

products," including "gross proceeds under arm's-length contracts," "posted prices," "prices received in arm's-length spot sales," and "other reliable public sources of price or market information"; and (c) "a net-back method" or any other reasonable method to determine value." *Id*.

25. With some limits, the regulations authorize a lessee to deduct transportation and processing costs when determining the value of its federal lease production. When a lessee executes an arm's-length contract with a non-affiliated entity for transportation or processing, the lessee may deduct the "reasonable, actual costs" incurred by the lessee for this service. *Id*. §§ 1206.157(a), 1206.159(a). When a lessee executes a non-arm's-length contract with an affiliated entity, the lessee may not rely on the contract's transportation and processing charges to support its deductions and instead must base deductions on the "reasonable, actual costs" which are generally incurred by the affiliated entity. *Id*. §§ 1206.157(b), 1206.159(b).

26. The costs of placing natural gas in marketable condition are not deductible costs for royalty computation purposes and must be incurred at no cost to the United States. *Id*. §§ 1206.152(i), 1206.153(i). "Marketable condition" means "lease products which are sufficiently free from impurities and otherwise in a condition that they will be accepted by a purchaser under a sales contract typical

for the field or area." 30 C.F.R. § 1206.151. Processes necessary to put gas into marketable condition may include compression, dehydration, and the removal of acid gases.

27. Subject to marketable condition requirements, lessees are permitted to use a reasonable amount of residue gas royalty free for operation of the processing plant. But, lessees may not deduct the costs of boosting residue gas (compressing residue gas after processing). 30 C.F.R. § 1202.151(b).

28. However the lessee produces, transports and sells its gas, "under no circumstances" shall the value reported for royalty purposes be "less than the gross proceeds accruing to the lessee for lease production, less applicable allowances." *Id*. §§ 1206.152(h), 1206.153(h).

29. A lessee is required monthly to account to ONRR for the value of its federal gas production by completing and submitting a Form ONRR-2014, Report of Sales and Royalty Remittance ("Form 2014"). This form requires the lessee to report on a summary basis the gross value and volume of production, the amount of any transportation and processing deductions, and the corresponding royalties due for each federal lease.

30. Because Form 2014 contains only summary data, the information on this form does not reveal how the lessee valued individual sales of gas from any particular lease to arrive at the valuation amount reported on the Form 2014.

31. A federal lessee is required to maintain all records pertaining to the leases, including accurate and complete records necessary to demonstrate the proper payment of royalties, for at least six years.  30 C.F.R. § 1212.50, 1212.51. A federal lessee is required to produce these records in an authorized audit or investigation upon request or within a reasonable period of time for historical records.  *Id.* § 1212.51(c).

### C.    The Defendants' Business Operations

32. At all times relevant to this action, Jansky wholly owned or was the controlling shareholder in Somont.

33. At all times relevant to this action, Jansky wholly owned or was the controlling shareholder in Ferdig.  Jansky formed Ferdig in or around 1987 to process gas, including the gas produced by Somont.  According to Jansky, he formed Ferdig in part so he could have "arm's-length agreements with himself [and Somont]."

34. At all times relevant to this action, Jansky, Somont, and Ferdig operated as a single business enterprise and conducted their business for the benefit of the overall enterprise.

35. At all times relevant to this action, Jansky, acting on his own behalf and on behalf of Somont and Ferdig, knew, or reasonably should have known, that he was subject to the applicable regulations for calculating royalties on federal gas production.

36. At all times relevant to this action, Jansky, acting through Somont, produced oil and natural gas from federal leases identified by the following numbers:

| | |
|---|---|
| 0240112950 | 0530499760 |
| 0530001580 | 0530514290 |
| 0530253110 | 0530537980 |
| 0530285190 | 0530549330 |
| 053028520A | 0530600980 |
| 0530380660 | 0530612490 |
| 0530451140 | 0530619740 |
| 0530451150 | 0530630130 |
| 0530462350 | 0530656880 |
| 0530462360 | 0530815200 |
| 0530462370 | 0530908140 |
| 0530462390 | 068051863A |
| 0530462410 | 068051977A |
| 0530487690 | 068052013A |
| 0530487700 | 068052136A |
| 0530487720 | 068052136D |
| 0530487730 | 068052137A |
| 0530487740 | 068052363A |

| | |
|---|---|
| 0680526110 | 0680846480 |
| 068053153A | 0680863220 |
| 0680774530 | 0680863400 |
| 0680832460 | 0680866930 |
| 0680844740 | 0680872820 |

37.     At all times relevant to this action, Jansky, acting through Somont, transferred natural gas from the foregoing leases to Ferdig to process and then sell NGLs/condensate and residue gas.   These transfers occurred under long-term, non-arm's-length contracts.   Ferdig then sold most of this production to third parties.

38.     In or around 2015, defendants' price per mmbtu, as calculated on ONRR Form-2014, slipped below ONRR's automated royalty filing threshold, causing defendants' royalty reports to be rejected.   Defendants requested an override to allow the report, and during the approval process, it was determined defendants were improperly calculating and reporting royalties.

39.     At all times relevant to this action, defendants computed and paid royalties on the non-arm's-length prices and fees that Ferdig paid to Somont ("the transfer price").

40.     At all times relevant to this action, the transfer price undervalued the defendants' natural gas for royalty computation purposes because it was calculated using prices that were too low and transportation deductions that were too high.

41. Under the applicable royalty regulations, the defendants were required to pay royalties on natural gas not sold pursuant to an arm's-length contract on not less than the reasonable value of the production as established under the applicable benchmarks.   30 C.F.R. §§ 1206.152(c), 1206.153(c).

42. For at least the last six years and likely since the 1980s, the price Ferdig charged Somont to process and transport gas was not based on the actual costs incurred.   Ferdig has not raised the rate since 1986.

43. At all times relevant to this action, the defendants improperly deducted unsupported costs, including costs that were incurred to place the gas in marketable condition.

44. Under the applicable royalty regulations, the defendants were prohibited from deducting costs for transportation and processing that included marketable condition costs and/or that exceeded the "reasonable, actual costs" incurred for these services.   30 C.F.R. §§ 1206.157; 1206.159.

45. At all times relevant to this action, the defendants engaged in improper valuation of the gas produced by Somont.   For instance, the defendants claimed the gas produced was "unprocessed" and netted out the transportation and processing charges allegedly incurred to move the gas.   Additionally, defendants

identified said transactions as arm's-length, when in fact they were non-arm's-length transactions.

46. Further, the defendants have failed to maintain records that support their deductions and costs for the required period. For instance, according to Jansky, the primary documents used to support his deductions and costs are his tax returns, which are insufficient under the applicable regulations. Plus, he has stated he maintains records for only four or five years.

## COUNT I
## False Claims Act, 31 U.S.C. § 3729(a)

47. The United States realleges and incorporates by reference all prior paragraphs of this Complaint as though set forth in full herein.

48. By virtue of the foregoing conduct, the defendants knowingly made or used, or caused to be made or used, false records and statements concerning the value of natural gas in order to conceal, avoid or decrease an obligation to pay or transmit money or property to the United States, in violation of 31 U.S.C. § 3729(a)(7).

49. By reason of these false records and statements, the defendants decreased their obligations to pay money to the United States as royalties for natural gas produced on federal leases and damaged the United States in an amount to be established at trial.

## COUNT II
## Federal Oil and Gas Royalty Management Act of 1982 (FOGRMA), 30 U.S.C. § 1722

50. The United States realleges and incorporates by reference all prior paragraphs of this Complaint as though set forth in full herein.

51. By virtue of the foregoing conduct, the defendants undervalued their production of natural gas from federal lands and, as a consequence, failed to pay the proper amount of royalties owed to the United States under the applicable laws and regulations.

52. By reason of these underpayments, the defendants have damaged the United States in an amount to be established at trial.

## COUNT III
## Unjust Enrichment

53. The United States realleges and incorporates by reference all prior paragraphs of this Complaint as though set forth in full herein.

54. By virtue of the foregoing conduct, the defendants failed to pay the full amount of royalties owed to the United States for natural gas produced on federal leases. The United States is entitled to payment of the remaining royalties owed by the defendants.

55. As a result of these underpayments, the defendants have been unjustly enriched at the expense of the United States, under circumstances dictating that in

equity and good conscience the additional money should be paid, in an amount to be determined at trial.

## COUNT IV
## Disgorgement

56. The United States realleges and incorporates by reference all prior paragraphs of this Complaint as though set forth in full herein.

57. By virtue of the foregoing conduct, the defendants failed to pay the full amount of royalties owed to the United States for natural gas produced on federal leases. The United States is entitled to payment of the remaining royalties owed by the defendants.

58. The defendants made or used, or caused to be made or used, false records and statements concerning the value of natural gas, in order to conceal, avoid or decrease their obligation to pay additional royalties to the United States.

59. This Court, ancillary to the authority conferred upon it by Congress under the leasing statutes, FOGRMA, and the FCA, has the equitable power to effectuate Congress' intention under those provisions to prohibit the defendants from avoiding their royalty obligations by ordering the defendants to disgorge the additional royalties owed to the United States.

## PRAYER FOR RELIEF

WHEREFORE, the United States requests that judgment be entered in its favor and against defendants as follows:

1.     On Count I (Claim under the False Claims Act), against the defendants, jointly and severally, for damages, penalties, and fees and costs, as provided by law, and any other relief that this Court deems appropriate.

2.     On Count II (Claim under FOGRMA), against the defendants, jointly and severally, for additional royalties owed to the United States, plus interest, and fees and costs, including the cost of investigation, as provided by law, and any other relief that this Court deems appropriate.

3.     On Count III (Claim for Unjust Enrichment), against the defendants, jointly and severally, for additional royalties owed to the United States, plus interest, and fees and costs, including the cost of investigation, as provided by law, disgorgement, and any other relief that this Court deems appropriate.

4.     On Count IV (Claim for Disgorgement), against the defendants, jointly and severally, for disgorgement of the additional royalties owed to the United States, plus interest, and any other relief that this Court deems appropriate.

**DATED** this 29th day of December, 2017.

        **KURT G. ALME**
        **United States Attorney**


        **/s/ MEGAN L. DISHONG**
        **Assistant U. S. Attorney**
        **Attorney for Plaintiff**